Donald K. SMITH, Plaintiff,

v.

**UNION PACIFIC RAILROAD CO., et al., Defendants.**

**No. 95 C 3216.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 30, 1996.

---

James L. Farina, of Hoey and Farina, Chicago, IL, for Plaintiff.

Richard A. Haydu of Union Pacific Railroad Company, Chicago, IL and Paul D. Williams of Day, Berry & Howard, Hartford, CT, for Rhone–Poulenc Basic Chemical Co.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

On June 19, 1996 this Court scheduled this action for an October trial (on that same June 19 date this Court approved the post-close-of-discovery submission of a final pretrial order ("FPTO") that had been jointly tendered by counsel for plaintiff Donald Smith ("Smith") and for defendants Union Pacific Railroad Company ("Union Pacific") and Rhone–Poulenc Basic Chemical Co. ("Rhone–Poulenc")). Following this Court's issuance of the FPTO, Smith's counsel has filed three motions in limine directed against Rhone–Poulenc, and the latter has responded to two of the three motions. This opinion will address all three.

### Rhone–Poulenc's Expert Witness

As the culmination of many years of concern, discussion and study (ferment may be a more accurate term) about perceived abuses in the discovery process, some major changes in Fed.R.Civ.P. ("Rule") 26 took effect on December 1, 1993. As always with changes in the Rules, those amendments had emerged from a long gestation period through the multistage process that had ended with the Supreme Court's April 1993 transmission of the amendments to Congress, coupled with Congress' failure to veto or modify the proposed revisions before their December 1 effective date.

In part the changes were revolutionary—so much so that the highly controversial new requirement for advance disclosure without a discovery request, embodied in Rule 26(a)(1), created a sharp split among district courts, with a majority of them (including this one) opting out of that requirement by local rule (as the Rule itself permitted). But no such opt-out option was made available with respect to the new Rule 26(a)(2), a rule that was triggered by concerns as to the less-than-meaningful disclosure that had marked the area of expert witness testimony.

In its new format, Rule 26(a)(2)(B) mandates that at least 90 days before a case is to be ready for trial,[1] the party expecting or planning to call an expert witness must provide a *very* detailed statement:

> Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

That level of detail was deliberately chosen by the Rule's drafters. Because their reasons for doing so are important for the resolution of the current motion, the Advisory Committee Notes that accompanied the 1993 amendment are also reproduced in detail here:

> This paragraph [Rule 26(a)(2)(B)] imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have

---

1. Under this Court's procedure, that means at least 90 days before the pretrial conference that is always held to discuss the proposed FPTO that the parties have prepared and submitted in accordance with this District Court's General Rule ("GR") 5.00.

a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.

\* \* \* \* \* \*

Paragraph (2)(B) requires that persons retained or specially employed to provide expert testimony, or whose duties as an employee of the party regularly involve the giving of expert testimony, must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor. The information disclosed under the former rule in answering interrogatories about the "substance" of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness. Revised Rule 37(c)(1) provides an incentive for full disclosure, namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed. Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.

The report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from dis-

closure when such persons are testifying or being deposed.

Revised subdivision (b)(4)(A) authorizes the deposition of expert witnesses. Since depositions of experts required to prepare a written report may be taken only after the report has been served, the length of the deposition of such experts should be reduced, and in many cases the report may eliminate the need for a deposition. Revised subdivision (e)(1) requires disclosure of any material changes made in the opinions of an expert from whom a report is required, whether the changes are in the written report or in testimony given at a deposition.

Now to turn to Rhone–Poulenc's activity (or inactivity) that has triggered Smith's motion. This Court had established an April 30, 1996 close-of-discovery date a few months earlier.[2] With that April 30 date having been set, the requirements imposed by the Standing Order that forms part of GR 5.00 became operative, importantly including this Paragraph 4 of the Standing Order (emphasis in original):

> In cases subject to this *Standing Order,* the court will, at an appropriate point, set a discovery closing date. Except to the extent specified by the court on motion of either party, discovery must be *completed* before the discovery closing date. Discovery requested before the discovery closing date, but not scheduled for completion before the discovery closing date, does not comply with this order.

■ Yet it was not until the last second— indeed on April 30—that Rhone–Poulenc, which on March 15, 1996 had identified Dr. Michael Grear as its contemplated expert witness by tendering its Supplemental Responses to Smith's Interrogatories, delivered Dr. Grear's Rule 26(a)(2)(B) report to Smith's counsel. And in the terms that are mandated by the new version of the Rule, that report can almost be viewed as a bad

---

2. This Court does not set such dates in the routinized way and at the early time specified in Rule 16(b). In this Court's experience such early scheduling almost invariably proves unrealistic because so much guesswork is involved in establishing a manageable timetable until the parties have traveled some distance down the discovery

road. Hence this Court typically sets a date for closing discovery only after an informed judgment can be made that the schedule can reasonably be met by the parties, including the obtaining of assurances from both sides' counsel that discovery can be comfortably completed within the set time frame.

joke—it certainly epitomizes the "sketchy and vague" information that the Advisory Committee described as having led to the 1993 revision. Here *in its totality* is Dr. Grear's "complete statement of all opinions to be expressed and the basis and reasons therefor":

> Dr. Grear is of the opinion that the plaintiff's right knee joint replacement arthroplasty was the result of pre-existing degenerative arthritic conditions and not casually [sic] related to the incident of February 2, 1994. Dr. Grear bases his opinions upon his background, experience and training as an orthopedic surgeon and upon a review of the complete medical records of the plaintiff and the plaintiff's deposition testimony.

Both in terms of its late timing and in its patently inadequate disclosure, the Rhone–Poulenc report is plainly violative of the operative rules. But Rhone–Poulenc's only response to Smith's motion in limine based on that delinquency is to attempt to fault *Smith's* counsel for their having "failed" to depose Dr. Grear to obtain the information that his report should have disclosed to begin with. Rhone–Poulenc Mem. 4 complains that Smith's counsel "has declined Rhone–Poulenc's repeated offers to produce Dr. Grear for his deposition in this case"—a complaint that glosses over (or more accurately, ignores entirely) the facts that:

> 1. Rule 26(b)(4), the provision that entitles a litigant to depose any expert, expressly forbids the taking of such deposition until *after* the Rule 26(a)(2)(B) report has been provided.

> 2. As quoted earlier, GR 5.00's Standing Order just as clearly requires each party to complete all the preconditions to an opposing party's discovery in time to permit that opposing party to take care of his, her or its discovery needs *before* the carefully-established close-of-discovery date.

In light of those interlinked requirements, it was plainly impermissible for Rhone–Poulenc to have delivered Dr. Grear's report on April 30—so late that Smith's lawyers could not, without violating both Rule 26(b)(4) and this District Court's Standing Order, depose Dr.

Grear (a deposition that they might not have had to take at all if Rhone–Poulenc had properly complied with the expansive report requirements in Rule 26(a)(2)(B)).

What does that mean in terms of Smith's motion in limine? In that respect, another of the December 1993 amendments to the Rules revised Rule 37(c)(1) to read in relevant part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Rhone–Poulenc's responsive Memorandum may be read in vain for even a whisper of "justification," let alone a "substantial" one, for its violation of the disclosure requirements of Rule 26 and the Standing Order. Rhone–Poulenc does not even utter a mea culpa, an acknowledgement of its own fault. Instead it somehow seeks to fault Smith— apparently for his not having acted to temper or to avoid the consequences of Rhone–Poulenc's own violations.

That is an extraordinary distortion of the major purpose of the obligations that the operative rules impose on Rhone–Poulenc in connection with its proposed expert testimony. Nor does it explain on what premise Rhone–Poulenc's failure might be characterized as "harmless" so as to render inapplicable the directive of Rule 37(c)(1). Accordingly Smith's motion in limine for the barring of Dr. Grear's testimony is granted in accordance with Rule 37(c)(1).

### *Rhone–Poulenc's Subpoenas to Medical Care Providers*

■ Next Smith seeks to bar Rhone–Poulenc from interrogating about, or referring to, the records of the entire set of Smith's medical care providers. This time it is Smith who has impermissibly blurred the line between discovery and trial.

What Smith complains of is that after the April 30 close-of-discovery date and the June 7 date for the parties' submission of the proposed FPTO (although just before the June 19 date when the parties and this Court

held the pretrial conference to discuss the FPTO and when this Court entered the FPTO itself), Rhone–Poulenc issued a set of subpoenas duces tecum to five of Smith's health care providers: three doctors, the University of Chicago Hospitals and Columbia Olympia Fields Osteopathic Medical Center. Smith's counsel characterizes those subpoenas as "depositions ... in direct conflict with the court's close of discovery and acceptance of the Final Pretrial Order" and thus urges that Rhone–Poulenc "should not be allowed to benefit in any way from its flagrant disregard of the order of this court." But Rhone–Poulenc responds that although Smith had identified those health care providers in response to earlier paper discovery, the records of those providers had never been delivered to Rhone–Poulenc's counsel. And Rhone–Poulenc specifically included those records in its list of exhibits that form part of the FPTO.[3]

Thus Rhone–Poulenc is surely entitled to bring those matters before the trier of fact in an appropriate manner at trial,[4] so that as long as the subpoenas are utilized only for the production of documents and not for the taking of depositions (which would constitute discovery beyond the permitted date) there is certainly nothing wrong with Rhone–Poulenc's getting an advance look at the records. Accordingly Smith's second motion in limine is denied.

*Railroad Retirement Board Benefits*

Smith's third motion in limine is brief—a two-page motion, including citations of authority, that requests the exclusion of "any argument, evidence, interrogation, or reference concerning collateral benefits received by Plaintiff from the USA Railroad Retirement Board pursuant to Fed.R.Evid. 103(c) and 104(a)." Rhone–Poulenc's response to that motion is even more brief—there is none.

Absent any objection to the final Smith motion, this Court grants it. There will be

---

3. Indeed, Smith's counsel noted an objection to only one of those exhibits, an objection limited to relevancy.

4. No question has been raised by Smith's motion in limine or by Rhone–Poulenc's response as to

no reference to such Railroad Retirement Board payments at trial.

the appropriate manner of introducing the exhibits or as to the appropriateness of any interrogation regarding them. Those matters will presumably be addressed during the trial.